## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| B.J. SMITH, BRADFORD ZINN, AND JERED ROSS, | |
| **Plaintiffs,** | |
| v. | **Case No. 22-CV-02048-JAR-ADM** |
| HIGHLAND COMMUNITY COLLEGE, HIGHLAND COMMUNITY COLLEGE BOARD OF TRUSTEES, RUSSELL KARN, DEBORAH FOX, and BRYAN DORREL, | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiffs B.J Smith, Bradford Zinn, and Jered Ross filed this action against Defendants Highland Community College ("HCC"), the HCC Board of Trustees ("the Board"), Russell Karn, Deborah Fox, and Bryan Dorrel, alleging numerous violations of their constitutional and statutory rights stemming from their suspension and eventual termination as coaches of HCC's women's basketball team.  Before the Court is Defendants' Partial Motion for Judgment on the Pleadings (Doc. 20) on the following causes of action: Plaintiffs' procedural due process claims against HCC for deprivation of their property and liberty interests pursuant to 42 U.S.C. § 1983 (Counts I and II); Plaintiffs Zinn and Ross' race discrimination claims against all Defendants under 42 U.S.C. § 1981 (Count III); Plaintiffs' retaliation claim against all Defendants under § 1981 (Count IV); and Plaintiffs' Failure to Protect claim against the Board and Karn under 42 U.S.C. § 1986 (Count IX).[1]  For the reasons stated below, the Court grants in part Defendants'

---

[1] The claims not at issue in this Partial Motion for Judgment on the Pleadings are: Plaintiffs' retaliation claim against HCC under Title IX (Count V); Plaintiffs Zinn and Ross' race discrimination claim against HCC under

motion with respect to the official capacity claims against Fox and Dorrel in Counts III and IV, and denies the motion in all other respects.

## I.  Legal Standard

The Court reviews a Fed. R. Civ. P. 12(c) motion under the same standard that governs a Fed. R. Civ. P. 12(b)(6) motion.[2]  To survive a motion to dismiss under Rule 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[3]  "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[4]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[5]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[6]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[7]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the Court "must take all the factual allegations in the complaint as true, [but]

---

Title VI (Count VI); Plaintiffs' retaliation claim against HCC under Title VI (Count VII); and Plaintiffs' conspiracy claim against all Defendants under 42 U.S.C. § 1985 (Count VIII).

[2] *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) (citing *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000)).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[4] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[7] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[8]  Thus, the Court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[9]  Second, the Court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[10]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

If matters outside the pleadings are reviewed, the Court generally must convert a Rule 12(c) motion to a Fed. R. Civ. P. 56 motion for summary judgment.[12]  However, the Court may consider documents that are attached to or referenced in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.[13]

Finally, "[a] motion for judgment on the pleadings 'should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'"[14]

## II.    Evidence Considered

Before turning to the facts and merits of Defendants' motion, the Court considers Plaintiffs' objection to the Court's consideration of the attachments to HCC's Answer, that is,

---

[8] *Id.*

[9] *Id.* at 679.

[10] *Id.*

[11] *Id.* at 678.

[12] Fed. R. Civ. P. 12(d).

[13] *See GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997) ("If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied.").

[14] *Colony Ins. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (quoting *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)).

Smith's and Zinn's employment contracts and an offer letter to Ross.[15]  Plaintiffs argue that it is error to consider these matters outside the pleadings without converting the motion to a motion for summary judgment.  HCC responds that the Court has broad discretion to consider such matters without conversion to a Rule 56 motion because attachments to the answer may be considered under Fed. R. Civ. P. 10(c), which provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

Plaintiffs do not attach the employment contracts for Smith or Zinn to their Complaint, though the Complaint references that they each had employment contracts with HCC and were each told that their contracts would not be renewed.[16]  Because Smith's and Zinn's employment contracts are both referenced in the Complaint and central to their claims, the Court may refer to these documents in resolving this motion without converting it to a motion for summary judgment.

The Complaint also states that Ross had a contractual relationship with HCC regarding his employment and that he was told his contract would not be renewed.[17]  HCC contends that Ross was an at-will employee without an employment contract and asks the Court to consider another attachment to the Answer, which purports to be an offer letter from HCC to Ross.

There appears to be a split in authority regarding whether documents attached to the answer but not referenced in or attached to the complaint may be considered on a Rule 12(c) motion without converting to a Rule 56 motion.  Some Circuit Courts of Appeal have concluded that the attachments incorporated in the answer are within the record for Rule 12(c) motions

---

[15] Docs. 17-4, 17-5, 17-6.

[16] Doc. 1 ¶¶ 118, 133, 198, 201, 246.

[17] *See e.g.*, Doc. 1 ¶¶ 125, 198, 246.

pursuant to the language of Rule 10(c).[18]  Other courts have found that attachments to an answer are not properly before the court on a Rule 12(c) motion.[19]  The Tenth Circuit has not squarely addressed the question, but has held that reliance on a settlement agreement attached to defendant's answer was not proper in resolving a motion under Rule 12(c) because it was evidence of an affirmative defense and not "central" to the plaintiff's claim.[20]

In the District of Kansas, Judge Vratil has interpreted the standard as allowing consideration of attachments to an answer.[21]  The court cautioned that "[m]ere attachment of such documents, however, does not render such exhibits dispositive," as in ruling on a Rule 12(c) motion, the Court must consider plaintiff's well-pleaded facts to be true and draw all inferences in his favor.[22]  Other district courts within the Tenth Circuit have also expressly or implicitly allowed consideration of attachments to an answer.[23]  Given this precedent from the District of Kansas allowing consideration of attachments to an answer, and given the lack of Tenth Circuit precedent expressly disallowing such consideration, the Court finds it proper to consider the offer letter attached to HCC's answer in ruling on this Rule 12(c) motion.  Although the offer

---

[18] *See, e.g.*, *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011); *Horsley v. Feldt*, 304 F.3d 1125, 1134–35 (11th Cir. 2002); *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

[19] *See, e.g., Clark v. Chase Home Fin.*, LLC, No. 08-cv-0500 JM(RBB), 2008 WL 2326307, at *4 (S.D. Cal. June 3, 2008) ("Defendants fail to cite a single authority where a court has considered documents attached to an answer in ruling on either a Rule 12(b) or Rule 12(c) motion."); *Toliver v. City of New York*, No. 10 CIV 3165 PAC, JCF, 2013 WL 1155293, at *2 (S.D.N.Y. Mar. 21, 2013).

[20] *Zevallos v. Allstate Prop. & Cas. Co.*, 776 F. App'x 559, 561 n.1 (10th Cir. 2019) (citing *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)).

[21] *Richard v. Perkins*, 373 F. Supp. 2d 1211, 1214–15 (D. Kan. 2005) ("Under Rule 10, Fed. R. Civ. P., documents attached as exhibits to pleadings—such as [the documents] attached to defendants' answers—technically are part of the pleadings).

[22] *Id.* at 1215 (citing *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674–75 (2d Cir. 1995)).

[23] *See Canady v. Nationwide Affinity Ins. Co. of Am.*, No. 19-cv-00344-RBJ, 2020 WL 376494, at *2–3 (D. Colo. Jan. 23, 2020) (collecting cases).

letter is not referenced in the Complaint, it is central to Ross' § 1983 due process claim that he

has a protectable property interest in continued government employment.[24]

### III.    Factual Background

The following facts are taken from the Complaint, and the employment contracts and

offer letter considered with the Complaint, and are assumed to be true for the purposes of

deciding this motion.

### *The Parties*

HCC is a public, two-year junior college located in Highland, Kansas.  It is a member of

the National Junior College Athletic Association ("NJCAA"), and its athletic teams compete in

the Kansas Jayhawk College Community Conference ("KJCCC").  The Board is the statutory

governing body for HCC, and Defendant Russell Karn is a long-serving member of the Board.

Defendant Deborah Fox has served as the President of HCC since 2019.  Defendant Bryan

Dorrel is the Athletic Director at HCC, and he primarily directs student-athlete recruitment,

conduct, and eligibility.

Plaintiffs B.J. Smith, Bradford Zinn, and Jered Ross are former coaches of HCC's

women's basketball team, the Scotties.  Smith served as Head Women's Basketball Coach since

August 2011 until his termination, effective June 2020.  Zinn joined Coach Smith's staff in 2017

as an Assistant Coach.  His primary duties included "skill development, strength conditioning,

and recruiting."[25]

---

[24] *See* Doc. 1 ¶ 170.

[25] *Id.* ¶ 33.

Both Smith's employment contract[26] and Zinn's employment contract[27] state that they are for the contract year beginning July 1, 2019 and ending June 30, 2020.  Both contracts state that "[w]hile the contract year covers a 12-month period, this position is a 10-month position with the specified work period of August 1, 2019, thru [sic] May 31, 2020."[28]  Both contracts further state that

> [T]he College may terminate this contract prior to the above stated termination date in the event the Employee fails or refuses to abide by and/or comply with the rules and regulations set forth in the Staff Policy Handbook or the requests and directions made and/or given by the President of Highland Community College.[29]

Coach Smith hired Ross as an Assistant Coach in June 2019.  Ross "had primary responsibility for helping players with their academics."[30]  In his offer letter, Ross is referred to as an "at-will employee."[31]

Smith coached the Scotties to numerous record-breaking seasons.  During Smith's first season at HCC, he led the Scotties to their first winning season in over fifteen years.  He then led the Scotties to the five best seasons in school history, including a 35-1 finish in the 2017-18 season—the highest record for the Scotties to date.  Over Smith's tenure at HCC, the Scotties won numerous accolades, including two KJCCC championships, three regional championships, a regional runner-up finish, and three national tournament appearances.

As a coach, Smith holds the highest win-loss record in HCC history.  Smith has sent multiple players to Division I and other four-year programs.  He also has graduated 100% of his

---

[26] Doc. 17-4.

[27] Doc. 17-5.

[28] Docs. 17-4, 17-5.

[29] *Id.*

[30] *Id.* ¶ 31.

[31] Doc. 15-6.

student athletes who joined his team as freshmen and who went on to play at Division I schools. For his achievements at HCC, Smith has won three national and regional "Coach of the Year" awards.

### Racial Demographics in Highland, at HCC, and in HCC Athletics

Highland is a rural community in Northeast Kansas with a population of nearly 1,000 people.  In the 2010 census, Highland's racial demographics were as follows: 84.7% white, 10% African American, 1.1% Native American, 0.4% Asian, 0.8% from other races, and 3.1% from two or more races.  At the time, HCC student athletes "were required to declare Kansas residency," so students comprised the majority of Highland's African American population.[32] Other than students, "only a handful of African American residents" live in Highland.[33]

HCC's racial demographics largely mirror the racial demographics of Highland.  White students comprise nearly 87% of HCC's student body, and African American students comprise less than 6% of the student body.  HCC's student athletes, however, are mostly African American.

Most of the student athletes that Zinn recruited were African American.  He primarily recruited prospective student athletes from "disadvantaged backgrounds and inner-city neighborhoods."[34]

### Smith's Initial Meeting with Dorrel

In September 2019, Athletic Director Dorrel saw Smith for their initial meeting.  Dorrel told Smith that his "players were an embarrassment in our community."[35]  He further directed

---

[32] *Id.* ¶ 21 n.1.

[33] *Id.*

[34] *Id.* ¶ 33.

[35] *Id.* ¶ 43.

Smith to "start recruiting more players the culture of the community could relate to."[36]  When Smith asked Dorrel to clarify, Dorrel stated "you know exactly what I mean."[37]

That fall, Smith secured commitments from two stand-out players from the Kansas City area.  Both women were African American.  Upon learning of the recruits, Dorrel asked Smith if "these are really the kind of players we want at Highland."[38]  Throughout the year, Dorrel continually pressured the athletic coaches to stop recruiting players with "dreadlocks and wicks" in favor of recruiting white student athletes.[39]

### Allegations of NJCAA Violations and Academic Misconduct

That fall, Smith and his staff were accused of NJCAA violations and academic misconduct.  HCC Board Chair Karn told other members of the Board and community that Smith had "acquired a car" for a former player from "a stolen car syndicate," in violation of NJCAA extra-benefit rules.[40]  Dorrel and Kristi Kelly-Blevins, an HCC employee, posted these statements and other accusations on Kelly-Blevins' Twitter account.[41]  HCC President Fox later accused Smith of violating NJCAA student athlete housing rules.

In December of 2019, Fox informed Smith that he and his staff were suspected of violating NJCAA academic dishonesty rules.  Fox stated the school was still investigating the matter, and she refused to describe the alleged violations.  While the investigation was still ongoing, HCC suspended Smith, Zinn, and Ross without notice or hearing and prohibited them from entering campus or contacting the team or staff.

---

[36] *Id.*

[37] *Id.*

[38] *Id.* ¶ 46.

[39] *Id.* ¶¶ 3, 63.

[40] *Id.* ¶¶ 45, 99.

[41] *Id.* ¶ 99.

While the investigation was still pending, Fox and Dorrel informed the women's basketball team and their parents that the coaches had "been doing players' homework."[42]  Fox emailed the team stating that the coaching staff was being investigated for academic dishonesty. Dorrel also informed the father of a high-rated player that Plaintiffs had committed "extensive abuses" and recommended that she transfer from HCC.  On January 4, 2020, Fox and Dorrel met with the team.  Fox informed the team that HCC received allegations of academic dishonesty, and that the allegations were "pretty severe and pretty solid."[43]  On January 6, 2020, Fox and Dorrel met with the parents of players to inform them of the allegations.  Dorrel stated that the allegation was "egregious enough that it warranted suspension right now."[44]  He further stated that HCC had "ample" evidence of "obvious, flagrant, and intentional" violations, the worst he had seen in his 25-year-tenure in college sports.[45]

On January 8, 2020, HCC issued a press release stating that Plaintiffs had been suspended pending an investigation into alleged academic misconduct in violation of NJCAA rules.  Fox also contacted the Jayhawk Conference Commissioner and reported "serious rules violations" had occurred within the HCC women's basketball program.[46]

### The January 2020 Board Meeting

On January 14, 2020, Smith, Zinn, and Ross were called to meet with the Board in executive session.  The Board did not provide advance notice of the purpose or topic of the meeting, nor were the coaches aware of specific allegations against them.  Each coach requested

---

[42] *Id.* ¶ 72.

[43] *Id.* ¶ 81.

[44] *Id.* ¶¶ 88–89.

[45] *Id.*

[46] *Id.* ¶ 131.

to have his lawyer present, and each request was denied without explanation.  At the meeting, the Board members admitted that HCC's purported investigation did not reveal any academic misconduct, nor any other violations of NJCAA bylaws.

That week, Fox informed Smith that he would be reinstated the next day, but that Zinn and Ross would remain suspended.  Zinn and Ross, Fox explained, had been "active in a lot of girls' accounts" in violation of "HCC student identity policies."[47]  She noted, however, that "neither appeared to have violated NJCAA rules," so she hoped both assistants would return to work in seven to ten days.[48]  Smith was reinstated the next day, but Ross and Zinn remained suspended.

### HCC Terminates Smith, Zinn, and Ross

In March 2020, Fox informed Zinn that HCC would not be renewing his contract and offered him the opportunity to resign.  Around the same time, Fox informed Ross that HCC would not be renewing his contract, and that he could resign from his job immediately or stay suspended until his contract expired at the end of the season.  Fox further informed Ross and Zinn that they must vacate campus housing within ten days.  In June 2020, Fox "demanded Smith resign or his contract would not be renewed."[49]

Since his employment was terminated, Smith has applied unsuccessfully for every junior college head coach opening nationwide.  Numerous prospective employers informed him that they could not hire him "solely because of the alleged NJCAA violations at HCC."[50]  Ross and

---

[47] Id. ¶ 96.

[48] Id.

[49] Id. ¶ 133.

[50] Id. ¶ 180.

Zinn likewise applied for numerous assistant coaching positions and were informed they would not be hired due to the academic misconduct allegations.

## IV.    Discussion

Defendants move for judgment on the pleadings on Plaintiffs' § 1983 procedural due process claims against HCC (Counts I and II); Zinn and Ross' § 1981 race discrimination claim against all Defendants (Count III); and Plaintiffs' § 1981 retaliation claim against all Defendants (Count IV).  Defendants also move to dismiss the official capacity claims against Fox, Dorrel, and Karn in Counts III and IV and Plaintiffs' failure to protect claim under 42 U.S.C. § 1986 (Count IX).  The Court considers these claims in turn.

### A.    Counts I and II—§ 1983 Procedural Due Process Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[51]  Plaintiffs premise their § 1983 claims against HCC on deprivations of their procedural due process rights under the Fourteenth Amendment.  The Fourteenth Amendment prohibits deprivation of "life, liberty, or property, without due process of law."[52]  "[P]rocedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision."[53]  To succeed on a procedural due process claim, an individual must prove that: (1) he possessed an

---

[51] *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330–331 (1986)).

[52] U.S. CONST. amend. XIV, § 1.

[53] *Archuleta v. Colo. Dep't of Insts., Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir. 1991) (citing *Williams–El v. Johnson*, 872 F.2d 224, 228 (8th Cir. 1989)).

interest constitutionally protected by the due process clause, and (2) he was not "afforded an appropriate level of process."[54]

Plaintiffs claim that they were suspended by HCC without due process in December 2019 and had neither notice of the purported allegations against them nor a hearing before being suspended or soon after their employment terminated.[55]  HCC does not contest that it was acting under color of state law, but it contends that Plaintiffs do not possess a protectible property or liberty interest.

### 1.    Count I—Property Interest

Plaintiffs claim that "each had a protectible property interest in their continued government employment."[56]  They contend that they were entitled to certain due process protections before being suspended mid-season and soon after their employment terminated.[57] HCC contends that Plaintiffs do not possess a protected property interest in continued employment because (1) Smith and Zinn had contracts for ten-month terms without any provisions for renewal, and (2) Ross was an at-will employee.

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlements to those benefits."[58]  In the employment context, procedural due process safeguards apply if the employee has a property interest in the employment—"[m]ore specifically, . . . 'a legitimate expectation in continued

---

[54] *Copelin–Brown v. N.M. State Pers. Off.*, 399 F.3d 1248, 1254 (10th Cir. 2005) (citing *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998)).

[55] Doc. 1 ¶¶ 134, 171.

[56] *Id.* ¶ 170.

[57] *Id.* ¶ 171.

[58] *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

employment.'"[59]  A legitimate expectation is distinct from a "unilateral expectation" or "an abstract need or desire" for employment.[60]  Courts determine whether an employee has a protected property interest by referencing independent sources such as state laws, local ordinances, and express or implied contracts.[61]  "Such interests may be created by rules or mutually explicit understandings that support [the plaintiff's] claim of entitlement to the benefit."[62]

In Kansas, only vested rights create a sufficient property interest to require due process protection.[63]  Under Kansas law, when a public employee is terminable at will, he or she "does not possess a legitimate claim of entitlement in continued employment."[64]  When the employee is terminable only for cause, however, that employee has a protected property interest in continued employment under state law.[65]

Whether continued government employment is a vested right depends on the terms of employment.[66]  Because public employment is presumptively at-will,[67] it does not create a protected property interest unless supported by statute, ordinance, or contract.[68]  An employee may have a legitimate expectation of continued employment arising from a contract for a fixed

---

[59] *Maranville v. Utah Valley Univ.*, 568 F. App'x 571, 574 (10th Cir. 2014) (quoting *Hesse v. Town of Jackson*, 541 F.3d 1240, 1245 (10th Cir. 2008)).

[60] *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994) (quoting *Roth*, 408 U.S. at 577).

[61] *Id.*

[62] *McDonald v. Wise*, 769 F.3d 1202, 1210–11 (10th Cir. 2014) (quoting *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1251 (10th Cir. 2007)).

[63] *Reams v. City of Frontenac, Kan.*, 587 F. Supp. 3d 1082, 1095 (D. Kan. 2022) (citing *Stoldt v. City of Toronto*, 678 P.2d 153, 155 (Kan. 1984)).

[64] *Farthing*, 39 F.3d at 1136.

[65] *Id.*

[66] *Id.*

[67] *Robert v. Bd. of Cnty. Comm'rs*, 691 F.3d 1211, 1220 (10th Cir. 2012) (applying Kansas law).

[68] *Stoldt*, 678 P.2d at 155.

term or an implied promise of continued employment.[69]  "To overcome the presumption of at-will employment, a written contract must expressly fix the duration of employment or otherwise limit the employer's liability to discharge the employee."[70]  Key to this determination, the duration of employment must be expressly fixed; the contract must not simply specify the length of employment, but also limit in some way the employer's ability to discharge.[71]

### Smith and Zinn

The Court first addresses Smith and Zinn's property interests in continued government employment.  Their employment contracts state that they terminate on a defined end date of June 30, 2020.  The contracts also state that the contract may be terminated prior to that date if the employee does not abide by certain rules or regulations, or requests or directives of the President of HCC.  There is no at-will language indicating that HCC could terminate Smith or Zinn absent cause or fault or that they served at the pleasure of HCC or the Board.[72]  Although the contracts do not expressly use "for cause" language, they do limit HCC's ability to terminate the coaching contracts.  Because Smith and Zinn were suspended during the term of their contracts, they have sufficiently alleged a constitutionally protected property interest in continued employment without suspension.[73]

---

[69] *McDonald*, 769 F.3d at 1210–11 (citing *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1251 (10th Cir. 2007)).

[70] *Reams v. City of Frontenac, Kan.*, 587 F. Supp. 3d 1082, 1095 (D. Kan. 2022) (citing *Robert*, 691 F.3d at 1220).

[71] *Id.* (citing *Hesse v. Town of Jackson*, 541 F.3d 1240, 1248 (10th Cir. 2008) (finding no property interest in contract for two-year renewable terms where town retained right to terminate at any time)).

[72] *See Stoldt*, 678 P.2d at 160.

[73] *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576–77 (1972) (holding employees dismissed during the terms of their contract have an interest in continued employment that is safeguarded by due process) (citation omitted); *cf. Paterno v. Pa. State Univ.*, 149 F. Supp. 3d 530, 539 (E.D. Pa. 2016) (finding no allegations that the employment of plaintiffs, who were assistant football coaches, was at-will with no protected property interest in continued employment; no dispute that head football coach had discretionary authority to determine his coaching staff)

The Court notes that Plaintiffs also appear to claim a property interest in the renewal of their season-long coaching contracts, stemming from the parties' "past actions, mutual understandings and underlying circumstances," specifically HCC's past practice to routinely renew the contracts of successful coaches.[74]  HCC argues that the employment contracts illustrate that Smith and Zinn had no interest in continued employment beyond that termination date unless their contracts were renewed and there is no requirement in the contracts for a hearing or explanation for non-renewal.

The Supreme Court's decision in *Board of Regents of State Colleges v. Roth* is instructive.[75]  In that case, the Court held the appointment terms of a professor, who was hired for a fixed period of one academic year with a specific termination date, did not support a claim of entitlement to re-employment for the following year.[76]  The Court reasoned that there was no protected property interest in re-employment because the professor's employment terminated on a specific date and no provisions were made for renewal.[77]  Courts have applied the reasoning in *Roth* to cases involving coaches with season-long contracts.[78]

In this case, the coaching contracts are for a specific time period, expire by their own terms, and do not state that they are subject to renewal on a date certain.  Thus, any expectation of employment Smith or Zinn had beyond the one-year term of their contracts did not arise from

---

[74] Doc. 27 at 5.

[75] 408 U.S. 564 (1972).

[76] *Id.* at 578.

[77] *Id.*

[78] *See, e.g., McGuire v. Indep. Sch. Dist. No. 833*, 146 F. Supp. 3d 1041, 1046 (D. Minn. 2015) (finding no protected property interest in renewal of basketball coaching contract where the contract was for a specific time period, expired by its own terms, did not provide for renewal, and stated that it was not subject to continuing contract law), *aff'd*, 863 F.3d 1030 (8th Cir. 2017); *Papagolos v. Lafayette Cnty. Sch. Dist.*, 972 F. Supp. 2d 912, 928–29 (N.D. Miss. 2013) (holding high school coach and fitness teacher whose one-year contract for the school year failed to allege a viable constitutionally protected property interest).

the terms of the contracts themselves.  Nonetheless, Smith and Zinn allege that it is apparent that HCC's past practice has been to routinely renew the contracts of its successful coaches, and point to the renewal of Smith's contract for the years 2011 through 2019.

The Tenth Circuit has held that the mere fact that an employer has renewed the employee's contracts in the past is insufficient to establish a legitimate expectation that is a constitutionally protected property interest.  In *Martin v. Unified School District No. 434*, the Tenth Circuit ruled that the fact that the plaintiff's contract had been renewed eleven times before was insufficient to create an "expectancy" in an employment position by a non-tenured school principal sufficient to support a claim under § 1983.[79]  There, the principal relied on three Kansas statutes, one of which applied only to tenured teachers, not principals, and two of which the school district had complied with.[80]  After determining that reliance on those statutes was unavailing, the court turned to the only other factor the principal relied upon—his history of eleven contract renewals—and found that insufficient to establish a mutually explicit understanding.[81]

Here, the Complaint describes at great length Smith's storied tenure at HCC, inheriting a losing program that he led to a championship-level basketball program that graduated 100% of its players who started at HCC as freshmen, some of whom went on to Division I-level play. Zinn participated in this successful program for three years.  Unlike *Martin*, the Complaint does not merely rely on the past contract renewals as a basis for Smith and Zinn's claim of entitlement to continued employment.  Instead, it relies on their history of producing a high-quality athletic

---

[79] 728 F.2d 453, 455 (10th Cir. 1984).

[80] *Id.*

[81] *Id.*; *see also Pierce v. Engle*, 726 F. Supp. 1231, 1236 (D. Kan. 1989) (citing *Martin*, 728 F.2d at 455) (holding that school principal's previous contract renewals were insufficient to create an expectancy in an employment position sufficient to support a claim under § 1983).

program and students with academic achievement and the understanding that may have flowed

from that.  And certainly, at this stage of the litigation, Smith and Zinn's claim should be not

foreclosed as a matter of law.[82]  HCC's motion is denied on these claims.

### Ross

HCC contends that Ross has no protectible property interest because he was an at-will

employee with no contract.  As previously discussed, HCC relies on what purports to be an offer

letter to Ross stating that his employment was at will.  The Complaint references no such letter,

and states that in March 2020, while he remained suspended, HCC told Ross that he could resign

immediately or stay suspended until his contract expired at the end of the season.[83]

To overcome the at-will presumption, Ross must allege that there is an express or implied

contract that shows otherwise.[84]  Kansas courts have recognized that an employer can create an

implied-in-fact contract based upon representations made in an employment manual or other

sources.[85]  "The relevant inquiry in determining whether an implied contract exists is whether the

parties intended to enter into an agreement restricting the employer's ability to terminate its

employees at will."[86]  Several factors are relevant to determining the parties' understanding and

intent, including written and oral negotiations, the conduct of the parties from the

commencement of the employment relationship, the nature of the employment, and other

---

[82] The Court notes that *Martin* was in a more developed posture, at the summary judgment stage. *See Martin,* 782 F.2d at 454.

[83] Doc. 1 ¶ 125.

[84] *Anglemyer v. Hamilton Cnty. Hosp.*, 58 F.3d 533, 537 (10th Cir. 1995).

[85] *Taylor v. Home Depot USA, Inc.*, 506 F. Supp. 2d 504, 517 (10th Cir. 2007) (applying Kansas law).

[86] *Id.* (quoting *Emerson v. Boeing Co.*, No. 94-3125, 1995 WL 265932, at *1 (10th Cir. May 8, 1995)).

circumstances that would tend to explain the parties' intent when the employment commenced.[87] This issue is typically a question of fact.[88]

Here, it is evident that there is an issue of fact as to whether Ross had an implied contract and/or was an at-will employee.  Indeed, HCC's position appears to raise an issue of fact as to whether Ross was an employee or merely "a volunteer assistant coach."[89]  The Complaint alleges that Ross had an implied contract at the least, and any disclaimer in the offer letter regarding the employment relationship is probative, but not dispositive of the issue.[90]  Like Smith and Zinn, Ross alleges a legitimate interest in continued employment stemming from the parties' "past actions, mutual understandings and underlying circumstances," specifically HCC's past practice to routinely renew the contracts of successful coaches.[91]  Accordingly, the substance of HCC's argument to dismiss Ross' claim is a highly factual issue that the Court cannot decide as a matter of law at the pleading stage.[92]

Because this Court must accept as true all well-pleaded facts, it finds that Ross has sufficiently pled a protectible property interest in continued government employment.  HCC's motion to dismiss is also denied on this claim.

---

[87] *See Morriss v. Coleman Co.*, 738 P.2d 841, 848–49 (Kan. 1987); *Kastner v. Blue Cross & Blue Shield of Kan., Inc.*, 894 P.2d 909, 916 (Kan. Ct. App. 1995).

[88] *Taylor*, 506 F. Supp. 2d at 517 (citation omitted).

[89] Doc. 21 at 1.

[90] *See Conrad v. Bd. of Johnson Cnty. Comm'rs*, 237 F. Supp. 2d 1204, 1258 (D. Kan. 2002) (applying Kansas law and explaining that for the disclaimer to be determinative, it must not be inconsistent with statements made by the employer to its employees).

[91] Doc. 27 at 5.

[92] *See Colony Ins. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (Holding a motion for judgment on the pleadings "should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.") (quoting *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)).

2.      **Count II—Liberty Interest**

Plaintiffs allege deprivation of their protected liberty interest in their good name and reputation when HCC made statements falsely accusing them of academic misconduct.  Plaintiffs allege these statements caused their termination from HCC and foreclosed future employment opportunities in basketball coaching.  HCC does not contest that there were defamatory statements made about Plaintiffs but contends that loss of future employment does not constitute a significant change in legal status under the so-called stigma-plus framework.

"A public employee has a liberty interest in his good name and reputation as they relate to his continued employment."[93]  A government official deprives an employee of this liberty interest when he makes a defamatory statement about the employee, which causes a significant alteration in the employee's legal status.[94]  Courts refer to these claims as "stigma-plus" claims.[95] The Tenth Circuit has established the elements of a stigma-plus claim: (1) a government official "makes a statement that 'impugn[s] the good name, reputation, honor, or integrity of the employee'; (2) the statement is false; (3) the statement is made during the course of termination *and* 'foreclose[s] other employment opportunities'; and (4) the statement is published, in other words disclosed publically [sic]."[96]

HCC contends that reputational damage that forecloses future employment opportunities is too intangible to constitute a significant change in legal status as a matter of law.  This argument, however, runs contrary to Supreme Court and Tenth Circuit precedent.  In *Roth*, the

---

[93] *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014) (citing *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994)).

[94] *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011) (citing *Paul v. Davis*, 424 U.S. 693, 711 (1976)).

[95] *Id.* (citing *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004)).

[96] *McDonald*, 769 F.3d at 1212 (alteration in original) (quoting *Workman*, 32 F.3d at 481).  *See also Melton v. City of Okla. City*, 928 F.2d 920, 926–27 (10th Cir. 1991)).

Supreme Court opined that a public employee is deprived of a liberty interest where the government "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. . . .  For '[t]o be deprived not only of present government employment but of future opportunity for it certainly is no small injury . . . .'"[97] Applying *Roth*, the Tenth Circuit has more recently explained that the classic stigma-plus claim in the context of public employment involves a governmental supervisor who defames the employee during the course of termination, foreclosing other employment opportunities.[98]

HCC further contends that Plaintiffs' allegations that they are unable to obtain other employment as basketball coaches do not constitute a legal change in status.  But the Tenth Circuit has indicated a loss of all employment opportunities is not required.  In *Watson v. University of Utah Medical Center*, the plaintiff could not secure employment in her chosen field as a labor and delivery nurse, although she was able to secure employment as a nurse in a different field.[99]  The Tenth Circuit held that plaintiff had sufficiently made a showing that her employer's actions "foreclosed her future employment opportunities in her chosen field as a labor and delivery nurse."[100]

Here, the Complaint alleges that Smith, Zinn, and Ross applied for "hundreds of junior college and collegiate coaching positions."[101]  Smith has "applied unsuccessfully for every junior

---

[97] 408 U.S. 564, 573–74 (1972) (alteration in original) (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 185 (1951) (Jackson, J., concurring)).

[98] *McDonald*, 769 F.3d at 1212 (citing *Workman*, 32 F.3d at 480).

[99] 75 F.3d 569, 579 (10th Cir. 1996).

[100] *Id.*; *see also Robinson v. Wichita State Univ.*, No. 16-2138-DDC-GLR, 2018 WL 836294, at *7–8 (D. Kan. Feb. 13, 2018) (finding that to survive motion for judgment on the pleadings, plaintiff's complaint only needs to allege that he cannot find work in his chosen field) (citing *Watson*, 75 F.3d at 579–80); *Salazar v. City of Albuquerque*, 776 F. Supp. 2d 1217, 1241 (D.N.M. 2011) (holding that a complaint sufficiently pleaded a deprivation of liberty claim when it alleged that plaintiff had been hired as a garbage truck driver instead of as a bus driver, which was plaintiff's chosen field).

[101] Doc 1 ¶ 5.

college head coach opening nationwide,"[102] but numerous prospective employers told him that they could not hire him "solely because of the alleged NJCAA violations at HCC."[103]  Likewise, Ross and Zinn have unsuccessfully applied for multiple assistant coaching positions at junior colleges, and several prospective employers stated they could not hire them because of academic misconduct allegations.  They have sufficiently pled facts sufficient to show that they were foreclosed from other employment opportunities in their chosen field as coaches.

Accordingly, the stigmatization alleged here rises to a constitutional level and is sufficient to state a plausible protectible liberty interest.  HCC's motion is denied on this ground.

### B.     Counts III and IV— Race Discrimination and Retaliation

Defendants allege that Counts III and IV—which assert violations of 42 U.S.C. § 1981— must be dismissed because Plaintiffs improperly pleaded separate claims for § 1981 and § 1983, rather than a single claim for § 1981 brought under § 1983.  Plaintiffs respond that they have properly brought their claims under § 1983 and only allege underlying violations of § 1981, rather than separate causes of action.  The Court agrees.

It is well established that "'[§ 1983] is not itself a source of substantive rights.'  Section 1983 serves instead only as a vehicle to 'provide[ ] relief against those who, acting under color of law, violate federal rights created elsewhere.'"[104]  In the preliminary statement of the Complaint, Plaintiffs allege that they "bring this action under 42 U.S.C. § 1983 for violation of their federal

---

[102] *Id.*

[103] *Id.* ¶ 180.

[104] *Sturdivant v. Fine*, 22 F.4th 930, 935 (10th Cir. 2022) (alterations in original) (footnote omitted) (first quoting *Sawyers v. Norton*, 962 F3d 1270, 1282 (10th Cir. 2020); and then quoting *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016)).

constitutional and statutory rights."[105]  They then incorporate this paragraph by reference into Counts III and IV, where they set forth factual allegations to support the underlying alleged § 1981 violations.[106]  As set forth in the Complaint, § 1981 creates the statutory right for Ross and Zinn's disparate treatment claims and Plaintiffs' retaliation claims, and § 1983 provides the exclusive remedy against state actors for the alleged violation of these statutory rights.[107]

Accordingly, Counts III and IV adequately place Defendants on notice of the nature of these claims against them.  The Court therefore denies Defendants' motion with respect to these counts.

### C.      Counts III, IV, and IX—Defendants Fox, Dorrel, and Karn in Their Official Capacities

In Count III, Zinn and Ross assert violations of § 1981 against HCC, the Board, Karn in his individual capacity, and Fox and Dorrel in both their individual and official capacities.  In Count IV, all Plaintiffs assert violations of § 1981 against HCC, the Board, Karn in his individual capacity, and Fox and Dorrel in both their individual and official capacities.  In Count IX, all Plaintiffs assert violations of § 1986 against the Board and against Karn in his individual capacity.  Fox, Dorrel, and Karn move to dismiss Counts III, IV, and IX against them in their official capacities, alleging that these claims are redundant in light of the claims against the Board and HCC as entities.  The Court agrees in part.

In *Kentucky v. Graham*, the Supreme Court explained that a suit against an individual in his official capacity is really "only another way of pleading an action against an entity of which

---

[105] Doc. 1 ¶ 6.

[106] *Id.* ¶¶ 193, 207.

[107] *Bolden v. City of Topeka*, 441 F.3d 1129, 1134–35 (10th Cir. 2006); *Hannah v. Cowlishaw*, 628 F. App'x 629, 632 (10th Cir. 2016).

an officer is an agent."[108]  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."[109]  Applying *Graham*, courts in this district have routinely dismissed official capacity claims against a state official when plaintiffs also name the local public entity of which the officer is an agent, such as the community college or municipal board, as a defendant.[110]

The Court grants Defendants' motion with respect to the claims against Fox and Dorrel in their official capacities.  Plaintiffs assert the same § 1981 claims against both HCC and Fox and Dorrel in their official capacities.  Therefore, the direct claims against HCC and claims against Fox and Dorrel in their official capacities are redundant.  A different result follows with respect to the claims against Karn, however, because they are brought against Karn in his individual capacity only.  Therefore, Plaintiffs' §§ 1981 and 1986 claims against Karn are not redundant of their claims against the Board.[111]

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Partial Motion for Judgment on the Pleadings (Doc. 20) is **granted** in part and **denied** in part.  The motion is **granted in part** with respect to the official capacity claims against Defendants Fox and Dorrel in Counts III and IV.  The motion is otherwise **denied** with respect to Plaintiffs' procedural due process claims against HCC in Count I and II; Plaintiffs' Section § 1981 claims pursuant to

---

[108] 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).

[109] *Id.* at 166.

[110] *See, e.g.*, *Douglass v. Garden City Cmty. Coll.*, 543 F. Supp. 3d 1043, 1057 (D. Kan. 2021) (collecting cases).

[111] In their reply brief, Defendants raise for the first time an argument that Plaintiffs fail to plead any specific facts establishing individual liability for Fox, Dorrel, and Karn.  Doc. 34 at 6.  To avoid sandbagging by counsel, the Court does not consider (or give much weight) to arguments raised for the first time in reply briefs.  *See Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003); *Ambac Assurance Corp. v. Fort Leavenworth Frontier Heritage Cmtys., II, LLC*, 315 F.R.D. 601, 608–09 (D. Kan. 2016).

§ 1983 in Counts III and IV; and Plaintiffs' individual capacity § 1986 claim against Defendant Karn in Count IX.

**IT IS SO ORDERED.**

Dated: January 24, 2023

                              S/ Julie A. Robinson
                              JULIE A. ROBINSON
                              UNITED STATES DISTRICT JUDGE